UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

EXCESS LINE ASSOCIATION OF NEW YORK,

Plaintiff,

vs.

THE HANOVER INSURANCE COMPANY, AND
MASSACHUSETTS BAY INSURANCE COMPANY,

Defendants.

---

Civil No. 14-CV-08345-LTS

**PRELIMINARY PRE-TRIAL
STATEMENT**

Pursuant to the October 27, 2014, Initial Conference Order [Doc. No. 11],
in the above-referenced case, Plaintiff Excess Line Association of New York ("ELANY"
or "Plaintiff") and Defendants The Hanover Insurance Company and Massachusetts Bay
Insurance Company (collectively "Hanover" or "Defendants") hereby submit this
Preliminary Pre-Trial Statement, which will constitute the written report required by Fed.
R. Civ. P. 26(f).

    a. A concise statement of the nature of this action.

        1. This is an action for declaratory judgment, breach of contract, and
reformation arising out of the refusal of Hanover to provide insurance
coverage to ELANY under a primary commercial general liability
insurance policy for a lawsuit brought against ELANY for alleged
"malicious prosecution" on April 30, 2014 (the "Underlying
Complaint").

        2. ELANY contends that Hanover has unilaterally decided that it will
provide defense cost coverage for the Underlying Complaint solely
under an umbrella liability insurance policy which Hanover also sold to

ELANY; however, Hanover has purported to "reserve its rights" to refuse coverage under the umbrella liability insurance policy.

3. Hanover contends that ELANY's defense and coverage are provided for in full by the umbrella policy in place and that ELANY is unlikely to suffer any gap in coverage as a result of having disclaimed coverage on one of the two policies in place; Hanover contends as well that its basis for disclaiming coverage on the primary policy is well grounded in the contract language and the law.

b. Whether there are any pending related criminal or civil actions.

1. There are no related civil or criminal cases pursuant to Rule 13 of the Local Rules of the United States District Court for the Southern District of New York. However, the Underlying Complaint is "related" to the instant action in the sense that it triggers the insurance policies at issue here.

c. A concise statement of each party's position as to the basis of this Court's jurisdiction of the action, with citations to all statutes relied upon and relevant facts as to citizenship and jurisdictional amount.

**Plaintiffs' Position Regarding Jurisdiction**

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because ELANY's principal places of business is in New York, and Defendants are incorporated in New Hampshire and have their principal places of business in Massachusetts, and the matter in controversy exceeds the sum or value of $75,000.

2. Personal jurisdiction is proper in New York because, at all times material hereto, Hanover operated, conducted, engaged in, or carried on a business or business venture in this state, there is the requisite nexus between the business and this action, and because Hanover engages in substantial and not isolated activity within New York.

3. Venue is proper in the Southern District of New York, pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claims herein asserted occurred in this District, and Hanover conducts business in the District.

**Hanover's Position Regarding Jurisdiction**

1. Hanover concurs with ELANY as to the basis for subject matter jurisdiction and does not dispute that there is personal jurisdiction and/or venue is proper in this Court.

d. A concise statement of all material uncontested or admitted facts.

1. For a period of years, ELANY purchased its general and umbrella liability insurance from the OneBeacon group of insurance companies.

2. In 2009, Hanover entered into a transaction by which, among other things, it obtained the right to solicit business from OneBeacon's insureds, including ELANY, which transaction some have referred to as a "renewal rights" agreement.

3. In a three-page letter dated December 14, 2010 from Hanover to ELANY's insurance brokers Gaston & Associates, Inc. ("Gaston"), Hanover offered insurance coverage to ELANY. That document

3

contained a number of terms, including "Prior Term Exclusions Apply," and "The policy should be reviewed upon receipt for coverage terms and conditions. If there is any conflict between the policy and this summary, the provisions of the policy shall prevail."

4.  After issuing this correspondence, Hanover prepared the insurance policies and delivered them to ELANY's insurance broker, Gaston, in Mount Kisco, New York.

5.  The policies provided by Hanover to ELANY contain, among other insurance coverage parts, commercial general liability insurance bearing policy number ZDY 8987024 00 (the "Primary Insurance Policy"), with a policy period of December 31, 2010 to December 31, 2011 and an umbrella liability insurance policy bearing policy number UHY 8959140 00 (the "Umbrella Insurance Policy"), with a policy period of December 31, 2010 to December 31, 2011.

6.  ELANY, its Executive Director and its Treasurer were sued by William and Stephen Waldorf in Suffolk County for alleged "malicious prosecution" in a complaint dated April 30, 2014, Index No. 063204/2014 (the "Underlying Complaint").

7.  Hanover does not dispute that ELANY provided timely notice of the Underlying Complaint to Hanover and sought coverage under the Primary Insurance Policy.

8.  By letters dated May 15 and May 16, 2014, Hanover denied coverage under the Primary Insurance Policy on terms set forth in detail in

4

those letters. Hanover predicated its denial of coverage for the Underlying Complaint under the Primary Insurance Policy, principally and among other things, on an exclusion entitled "Exclusion – Insurance and Related Operations." That exclusion had not been included in ELANY's prior coverage with OneBeacon.

9.  Hanover classified ELANY, for purposes of the policies at issue, as an Insurance Agent or Broker, and not as non-profit association.

10. In the same correspondence dated May 15 and 16, 2014, Hanover agreed, among other things, to assume ELANY's defense of the Underlying Complaint under the Umbrella Insurance Policy under a purported "reservation of rights." The reservation of rights was made with citations to policy language and explanations of the reasons for such reservations.

11. Hanover has been funding ELANY's defense of the Underlying Complaint since that time.

e.  A concise statement of all uncontested legal issues.

1.  This Court has jurisdiction for the reasons stated above.

f.  A concise statement of all legal issues to be decided by the Court.

1.  Whether an actual and justiciable controversy exists between Plaintiff and Defendants regarding the appropriate insurance policy to cover— at the present time—the Underlying Complaint.

2.  Whether Plaintiff is entitled to a judicial declaration from this Court that the Primary Insurance Policy is presently triggered and covers, in full,

the Underlying Complaint and that the Umbrella Insurance Policy

provides insurance coverage thereafter if needed.

3. Whether the Primary Insurance Policy's terms of insurance coverage

between Hanover and ELANY have been triggered to provide

insurance coverage for ELANY's insurance claim.

4. Is Plaintiff entitled to a reformation of the Primary Insurance Policy

that would remove the exclusion Hanover relies upon in its disclaimer

of coverage on the grounds of inadvertent mutual mistake, mistake,

scrivener's error, or fraud?

    a. was there mutual or unilateral mistake?

    b. did Hanover commit fraud/can the elements of fraud be

       proven?

    c. do the communications from Gaston to ELANY, or from

       Hanover to Gaston, bind Hanover to the exact terms of the

       OneBeacon policies?

5. Whether it was reasonable for ELANY to rely on Hanover's and

Gaston's representations as to the coverage it would receive under

the Primary Insurance Policy when it purchased insurance

coverage from Hanover pursuant to the "renewal rights" agreement.

6. Whether Gaston's representations can in any way be attributable to

Hanover, such that they become a basis upon which ELANY could

rely as a purported manifestation of Hanover.

7. Does an alleged misclassification of an insured for a CGL policy constitute legal grounds upon which an insurance contract, presented by an insurer and accepted by an insured, be altered, reformed, and changed by a court?

8. PLAINTIFF'S FORMULATION: Does the Primary Insurance Policy issued pursuant to the Hanover/OneBeacon renewal rights agreement, constitute a "renewal" under New York Insurance Law § 3426(e) that would require coverage to be offered on identical terms.

9. DEFENDANTS' FORMULATION: Does the issuance of the Primary Insurance Policy constitute a "renewal" under New York Insurance Law § 3426(e) that would require coverage to be offered on identical terms (as per the terms of the insurance law), even though the issuer (Hanover) is a different company than the issuer of the prior policy (One Beacon).

10. Is ELANY a third-party beneficiary of the transaction between Hanover and OneBeacon, or is there any other legal basis upon which ELANY can claim that an agreement between two insurance companies to which ELANY was not a party has some bearing on the terms of an insurance contract it subsequently enters into with one of the parties.

7

11. Does the claim ELANY made to Hanover for the insurance coverage at issue fall within the Primary Insurance Policy's "Insurance and Related Operations" exclusion or not.

    a. Did the malicious prosecution alleged against ELANY in the underlying complaint result from actions ELANY took to manage an insurance association.

    b. Whether Hanover's broad interpretation of the "Insurance and Related Operations" exclusion renders ELANY's insurance coverage illusory in violation of New York law.

12. Since ELANY is receiving a full defense under the Umbrella Insurance Policy, has ELANY suffered any damages as a result of the purported breach of contract by Hanover.

g. Each party's concise statement of material disputed facts.

**Plaintiffs' Concise Statement of Material Disputed Facts**

1. Hanover purchased the "renewal rights" for a book of insurance coverage business from OneBeacon, including the "renewal rights" to ELANY's commercial general liability and umbrella insurance coverage. Through this purchase from OneBeacon, Hanover acquired rights from OneBeacon to offer renewal coverage that OneBeacon previously had underwritten.

2. On or around January 1, 2010, Hanover Insurance Group took over the underwriting process from OneBeacon for ELANY's insurance account.

8

3. On January 11, 2010, ELANY's Gaston informed ELANY of "[t]he sale of OneBeacon business to Hanover."

4. Gaston represented in the email that the "Dec[ember] [OneBeacon] renewals were issued on [OneBeacon] paper but will be serviced by Hanover (basically the OB underwriters who went over to Hanover) and the renewals next Dec[ember] will be on Hanover paper."

5. Gaston also represented that Hanover would be "keeping the same business segments and very broad policies" as OneBeacon and that the same "[c]laim people moved over [from OneBeacon] to Hanover too."

6. Hanover underwriters (formerly with OneBeacon) underwrote at least part of, if not all of the 12/31/09 – 12/31/10 insurance coverage, and provided ELANY with a OneBeacon renewal policy on the same fundamental terms as the previous OneBeacon policy.

7. In seeking renewal coverage for ELANY in late 2010, ELANY's insurance brokers worked with the same underwriters that were formerly employed by OneBeacon to ensure continuity of insurance coverage.

8. In offering renewal coverage to ELANY, Hanover represented in the December 14, 2010 correspondence that "Coverage is being offered for this account as part of the OneBeacon renewal rights agreement."

9. The December 14, 2010 correspondence provided that the total premium for the "Property/GL/Automobile" coverage would be $6,785,

9

which is within $120 of what ELANY paid under the 12/31/09 –

12/31/10 primary policy.

10. The December 14, 2010 correspondence between Hanover and

ELANY also represented that the limits and deductibles for "Property

Location Coverages," "Property Policy Coverages," and "General

Liability Policy Coverages," for Hanover's renewal coverage would be

exactly the same as the expiring policy.

11. ELANY reasonably relied on its interpretation of the language of the

December 14, 2010, summary offer of insurance to believe that

coverage was being provided on terms identical to, substantially the

same as, or upon the same fundamental terms as the terms of

coverage ELANY previously had received.

12. Any purported mistake as to the coverage provided was mutual or the

product of fraud; Hanover intended or agreed, to provide coverage to

ELANY that would be identical to, substantially the same as, or upon

the same fundamental terms as the coverage ELANY previously had

received, but the Primary Insurance Policy does not contain the terms

and exclusions Hanover intended to offer for ELANY's acceptance.

13. Hanover represented facts to ELANY in connection with the offer and

acceptance of the Primary Insurance Policy that were untrue and/or

that Hanover knew to be untrue at the time.

14. Hanover made false statements with the intent to induce reliance in

the December 14, 2010 renewal summary offer correspondence.

15. ELANY did not receive a notice of non-renewal from OneBeacon or Hanover pursuant to New York Insurance Law §3426(e) until after the current insurance dispute began in 2014.

16. The Primary Insurance Policy does not reflect the meeting of the minds.

17. To the extent that the terms of the Primary Insurance Policy differ from the prior policy, ELANY and/or its representatives did not accept these terms.

**Hanover's Concise Statement Of Material Disputed Facts**

1. ELANY is in the insurance business and has a full and complete understanding of the relationships between OneBeacon, Hanover, Gaston, and itself as an insured in the context at issue.

2. Gaston was ELANY's agent, not Hanover's agent; ELANY knew that Gaston did not speak for Hanover in any communications Gaston had with ELANY about the terms or significance of Hanover's transaction with OneBeacon.

3. Neither ELANY nor Gaston ever actually saw the contracts and other documents governing the transaction between Hanover and OneBeacon; any statements made about the terms of the transaction by Gaston or ELANY are speculation.

4. Hanover made no representations to ELANY as to the terms upon which it would offer insurance coverage other than those set forth in

the December 14, 2010 letter and those set forth in the policies themselves.

5. Hanover did not state, in sum or substance, that it would "provide insurance coverage identical to, substantially the same as, or upon the same fundamental terms as the coverage ELANY previously had received." These formulations of purported representations by Hanover cannot be found anywhere in the record -- they appear to be, at best, interpretations of the written representations actually made.

6. The December 14, 2010 letter states in clear terms that the Policy "should be reviewed upon receipt for coverage terms and conditions" and "if there is any conflict between the policy and this summary, the provisions of the policy shall prevail."

7. ELANY and its agent, Gaston, had a full and fair opportunity to review the terms of the policies provided and chose to accept those terms and pay premiums for the coverage received.

8. ELANY relied on itself and/or Gaston for the decision as to whether to accept the insurance policies provided to ELANY, not on Hanover or anything it purportedly represented.

9. Hanover never intended to provide identical coverage to the coverage previously provided by OneBeacon, to induce reliance, or to trick ELANY in any way. ELANY's allegations on that subject are wholly without basis in fact.

12

h. A concise statement by each plaintiff and each counterclaimant of the legal basis of each cause of action asserted, including citations to all statutes, Federal Rules of Civil Procedure, other rules and case law intended to be relied upon by such plaintiff or counterclaimant.

1. Declaratory Judgment

   i. 28 U.S.C. § 2201

   ii. Fed. R. Civ. P. 57

   iii. *McCostis v. Home Ins. Co.*, 31 F.3d 110, 113 (2d Cir. 1994) (vacating summary judgment for insurance company in declaratory judgment action because of ambiguity in policy)

2. Breach of Contract

   i. *Thomas J.Lipton, Inc. v. Liberty Mut. Ins. Co.*, 34 N.Y.2d 356, 361 (N.Y. 1974) (rejecting insurance company's construction of policy language that would render coverage illusory)

   ii. *Janes v. N.Y. State Cent. Mut. Ins. Co.*, 281 A.D.2d 982 (4th Dep't 2001) (awarding summary judgment to policyholder because the insurance company could not rely on an exclusion in a renewal to bar coverage when it did not provide advance notice to the policyholder of the exclusion)

   iii. *Hay v. Star Fire Ins. Co.*, 77 N.Y. 235 (N.Y. 1879) (holding that it was bad faith on the part of the insurance company to have changed so radically the terms of the policy, and to have delivered it as a policy simply renewing the old one, without providing notice of the change and further holding that the

insurance company, by preparing a policy which materially changed the terms of the previous agreement and delivering it as in accordance therewith, committed a fraud which entitled the insured to relief)

    iv. *McCostis v. Home Ins. Co.*, 31 F.3d 110, 113 (2d Cir. 1994) ("[A]ny ambiguity in an insurance policy should be resolved in favor of the insured")

3. Reformation

    i. *A.S. Blue, Inc. v. One Beacon Ins. Co.*, No.3:13-0581, 2013 U.S. Dist. LEXIS 74270 (M.D. Pa. May 28, 2013) (describing the Hanover/OneBeacon renewal rights agreement)

    ii. *Janes v. N.Y. State Cent. Mut. Ins. Co.*, 281 A.D.2d 982 (4th Dep't 2001) (awarding summary judgment to policyholder because the insurance company could not rely on an exclusion in a renewal to bar coverage when it did not provide advance notice to the policyholder of the exclusion)

    iii. *Hay v. Star Fire Ins. Co.*, 77 N.Y. 235 (N.Y. 1879) (holding that it was bad faith on the part of the insurance company to have changed so radically the terms of the policy, and to have delivered it as a policy simply renewing the old one, without providing notice of the change and further holding that the insurance company, by preparing a policy which materially changed the terms of the previous agreement and delivering it

14

as in accordance therewith, committed a fraud which entitled the

insured to relief)

iv. *L. Lewitt & Co. v. Jewelers' Safety Fund Soc.*, 164 N.E. 29,

(N.Y. 1928) (holding that a jewelry wholesaler was entitled to

reformation since the new policy incorrectly expressed the

agreement previously entered into by the parties. The court

found that the old policy provided for coverage with regards to

the salesman at issue and that the new policy should have

provided the same. It was immaterial that the policyholder's

agents failed to read the new policy before the theft)

v. *McCoubray v. St. Paul Fire & Marine Ins. Co.*, 50 A.D. 416 (2d

Dep't 1900) (reforming policy that named the wrong insured)

vi. *Smith v. Mutual Trust Life Ins. Co.*, 19 Misc. 2d 820 (N.Y. Sup.

Ct. Kings Cnty. 1959) (holding policyholder entitled to

reformation of life insurance policy and that laches did not bar

his claim)

vii. *State Farm Mut. Auto. Ins. Co. v. Guarascio*, 153 Misc. 2d 485

(N.Y. Sup. Ct. Nassau Cnty. 1992) (reforming insurance policy

and noting that an agreement to renew a policy implied that the

terms of the existing policy were continued in the absence of

evidence that a change was intended)

viii. NY Insurance Law § 3426

15

i.   Each party's concise statement of the legal basis of each defense asserted or expected to be asserted by such party, including citations to all statutes, Rules, and other applicable regulatory and judicial authority intended to be relied on by such party.

1.   ELANY is not entitled to change the policy's terms to remove the exclusion that Hanover relies upon in disclaiming coverage because:

   i.   there was no "meeting of the minds" to provide a policy without the exclusion -- there was no mutual mistake or scrivener's error;

   ii.   Hanover did not commit fraud because it made no false statements of material fact

   iii.   it was not reasonable for ELANY to assume that coverage would be provided on terms identical to those of the OneBeacon Policy -- no Hanover representations said any such thing;

   iv.   it was not reasonable for ELANY to rely upon the December 14, 2010 letter if there was any conflict between that letter and the policies actually issued -- the letter was unequivocal and clear in directing ELANY (or its agent) to review the policy and is stating that "if there is any conflict between the policy and this summary, the provisions of the policy shall prevail."

   v.   it was not reasonable for ELANY to rely upon certain phrases or clauses of the December 14, 2010 letter as offering coverage on terms "identical to, substantially the same as, or upon the same

16

fundamental terms as" the prior policy -- that is not a reasonable reading of that document.

    vi.  It was not reasonable for ELANY to rely upon anything that Gaston represented to it because Gaston was ELANY's agent, not Hanover's agent.

2.  There is no basis to contend that the Hanover policies must conform to the terms of the OneBeacon policies because they are a "renewal" of the OneBeacon policies:

    i.  Hanover policies are separate and new insurance for ELANY;

    ii.  They do not constitute a "renewal" of an insurance policy under Insurance Law § 3426(a)(4), which defines "renewal" to mean "the issuance or offer to issue by an insurer of a policy superseding a policy previously issues and delivered by the same insurer, or another insurer under common control";

    iii.  Hanover is not the same insurer as, nor is it under common control with, OneBeacon.

    iv.  ELANY has no legal basis to claim that, under the Insurance Law, it was not obliged to review the terms of the policies Hanover issued and ELANY accepted.

3.  There is no legal basis to change the terms of a duly agreed to contract of insurance on the grounds that the insured was "misclassified"

17

      i.  classifications are simply an aid to underwriters to determine the terms upon which insurance coverage will be offered

      ii.  upon accepting the coverage offered, the terms of the contract were bound.

4.  There is no coverage under the Primary Insurance Policy because the claim at issue falls within the Insurance and Related Operations exclusion

      i.  ELANY was sued in the Underlying Complaint because its efforts to collect money from a member of its insurance organization constituted malicious prosecution

5.  There is no viable breach of contract claim, or such a claim is premature, because ELANY is receiving a full defense from Hanover under the Umbrella Insurance Policy and, accordingly, has incurred no damages.

j.  A concise statement of the measure of proof and on whom the burden of proof falls as to each cause of action or defense.

1.  The burden of proof in a declaratory judgment action is on the party who would bear it if the action were brought in due course as a claim for non-declaratory relief.

2.  Plaintiff has the burden of proving a breach of contract by a preponderance of the evidence. However, in an insurance dispute, once the policyholder has satisfied the initial burden that a covered

18

loss has occurred, the burden shifts to the insurance company to

demonstrate that the alleged loss is excluded from coverage.

3. Plaintiff has the burden of proof in reforming a contract by clear and

   convincing evidence.

4. Defendants state that Plaintiff bears the burden of proof on every

   claim and legal issue described herein with the exception of proving

   that the insurance claim at issue falls within a policy exclusion (for

   which Defendants bear the burden of proof). None of Hanover's

   defenses are affirmative defenses.

k. Whether and to what extent amendments to pleadings and/or the addition or
   substitution of parties will be required, and proposed deadlines therefor.

   1. The parties do not anticipate needing to amend their pleadings.

      However, should discovery unearth material that would necessitate

      the need to amend, the parties reserve the right to do so, subject to

      the Court's approval upon application.

l. A statement as to whether all parties consent to transfer of the case to a
   magistrate judge for all purposes, including trial (without identifying which
   parties have or have not so consented).

   1. All parties do not consent to transfer the case to a magistrate judge.

m. What, if any, changes should be made in the timing, form or requirements for
   disclosures under Fed. R. Civ. P. 26(a), including a statement as to when any
   disclosures required under Fed. R. Civ. P. 26(a)(I) were made or will be
   made.

   1. The parties propose Thursday, January 22, 2015 as the deadline to

      exchange the initial disclosures required by Fed. R. Civ. P. 26(a)(1).

19

n.  The subjects on which disclosure may be needed and a proposed discovery cut-off date.

**Disclosure Subjects**

1. The intent of the parties in renewing insurance coverage;

2. Hanover's interpretation of the "Insurance and Related Operations" exclusion;

3. The OneBeacon/Hanover renewal rights agreement and related internal and external correspondence and documents (Defendants dispute that there is a need to have discovery into the OneBeacon/Hanover transaction, other than the delivery of the transaction documents themselves);

4. The events leading up to Hanover's renewal of ELANY's insurance coverage;

5. The relationship between Gaston and ELANY;

6. The level of expertise in insurance matters of ELANY's representatives; and,

7. Other insurance held by ELANY.

**Proposed Discovery Cut-off Date**

1. The parties propose a fact discovery cut-off date 100 days from the initial prehearing conference.

o.  Whether and to what extent expert evidence will be required, and proposed deadlines for expert discovery.

1. Given Plaintiff's claim that its classification by Hanover has some bearing on the terms of the coverage at issue, Defendants may seek

20

to introduce expert evidence on the use of classifications in the

insurance industry as an underwriting tool and/or other CGL insurance

coverage and underwriting concepts. If Defendants designate an

expert with respect to this issue, ELANY expressly reserves the right

to designate a rebuttal expert. Deadlines will be determined should

Defendants designate an expert.

p. What, if any, changes should be made in the limitations on discovery imposed under the Federal Rules of Civil Procedure or the Local Rules of court, and what other limitations should be imposed.

    1. None at this time.

q. The status of settlement discussions and the prospects for settlement of the action in whole or in part, provided that the Preliminary Pre-Trial Statement shall not disclose to the Court specific settlement offers or demands.

    1. The parties are still discussing the prospect of settlement.

    2. ELANY has agreed to mediate this dispute, but Hanover contends

       that the subjects covered in their discussions of settlement have been

       comprehensive, there are only coverage positions (,not dollar

       amounts), at stake, and mediation at this stage would be of no value.

r. A statement by each party as to whether the case is to be tried with or without a jury, and the number of trial days expected to be needed for presentation of that party's case.

    1. ELANY requests a jury trial on all issues so triable. ELANY anticipates

       calling two or three witnesses and for the trial to take between four

       and five days in total.

    2. Hanover anticipates that most of the material issues in the case are

       legal, that the face issues in dispute can be narrowed through motion

21

practice, and that a trial would take one to two days, if one becomes necessary at all.

s.  Any other orders that should be entered by the Court under Fed. R. Civ. P. 26(c) or Fed. R. Civ. P. 16(b) and (c).

   1.  Proposed deadline to serve requests for documents and interrogatories: 21 days from Initial Pre-Trial Conference.

   2.  Proposed deadline to produce documents and respond to interrogatories: 45 days from service for document requests..

   3.  Proposed deadline to commence depositions: 28 days after document production is completed.

Respectfully submitted,

Joshua Gold
Dennis J. Nolan
Bruce E. Strong
Anderson Kill, P.C.
1251 Avenue of the Americas
New York, New York 10020
*Attorneys for Plaintiff*

Gary Meyerhoff
Dentons US LLP
1221 Avenue of the Americas
New York, New York 10020
*Attorneys for Defendants*

22